## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| BRENNA BIRD, in her official capacity as the Attorney General of Iowa, and<br><br>PAUL PATE, in his official capacity as the Secretary of State of Iowa,<br><br>  *Plaintiffs*,<br><br>v.<br><br>ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security;<br><br>DEPARTMENT OF HOMELAND SECURITY;<br><br>UR M. JADDOU, in her official capacity as Director of U.S. Citizenship and Immigration Services; and<br><br>UNITED STATES CITIZENS AND IMMIGRATION SERVICES,<br><br>  *Defendants*. | No. _____ |

## **COMPLAINT**

1. On October 29, 2024, seven days before the Presidential election, United States Citizenship and Immigration Services delivered bad news to Iowa election officials: despite having confirmed that hundreds of noncitizens were on Iowa's voter rolls after a manual individualized process, USCIS would not hand over to the State USCIS's list of noncitizens illegally registered to vote in Iowa.

2. Iowans were aghast. Senators Chuck Grassley and Joni Ernst called on USCIS to reverse its decision not to hand over the information. Election integrity—long a core goal of Secretary Pate and his team—was potentially at risk. But USCIS never did.

3. So the State instead went through the best verification process it had available to identify those unqualified to vote: the State relied on a list of 2,176 individuals who had self-identified as non-citizens. Every person on that list who intended to vote in the 2024 general election either needed to show proof of citizenship to avoid a ballot challenge at the polls or cast a provisional ballot and cure over the next week.

4. Four individuals and LULAC, represented by the ACLU and Faegre Drinker sued seeking a temporary restraining order to upend decades of voting law enacted under then-Governor Tom Vilsack. Their message was clear: Better to let hundreds of noncitizens vote than to force one citizen to show a passport or naturalization certificate at the polls. The district court denied their requested relief. All parties agreed that a narrower list of all confirmed noncitizens would have avoided this issue altogether.

5. On the one hand, even though federal and Iowa law prohibit non-U.S.-citizens from voting, federal law *prohibits* Iowa from requiring documentary proof of citizenship from people seeking to register to vote. On the other hand, federal law *requires* the Department of Homeland Security to respond to inquiries from appropriate Iowa authorities about the citizenship status of persons registered to vote.

6. DHS refuses to comply with that duty. Attorney General Bird and Secretary Pate, on behalf of the State of Iowa, are thus left to petition the Court for an injunction requiring Defendants to comply with federal law and give Iowa the information Defendants are required to supply to secure the integrity of Iowa elections.

7. Although federal and Iowa law prohibit non-citizens from voting, federal law paradoxically creates opportunities for noncitizens to illegally register to vote while prohibiting States from requiring voters to have proof of citizenship to vote in federal elections—a common sense measure to identify illegal registration. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

8. There are 65,000 people registered to vote in Iowa whose citizenship cannot be verified using existing State resources. The federal government has those resources.

9. Almost two weeks after the election USCIS reached out with an offer—not relating to the hundreds of identified noncitizens on Iowa's voter rolls but about giving Iowa access to the Systematic Alien Verification for Entitlements ("SAVE") program. Indeed, USCIS's letter ignored the ongoing and pressing problem of known and identified nonvoters on Iowa's voter rolls.

10. Iowa intends to continue to negotiate in good faith to access the SAVE program. Access to the SAVE program does not satisfy the Secretary's lawful request for the extant list that USCIS

possesses. The relief sought in this suit is outside of and independent of SAVE.

11. Section 1373(c) of Title 8, U.S. Code, requires the federal government to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information." Sections 1373(a) and 1644 in turn prohibit federal entities and officials from "prohibit[ing], or in any way restrict[ing], any government entity or official from sending to, or receiving from, [USCIS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual" and make clear that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [USCIS] federal information regarding the immigration status, lawful or unlawful, of an alien in the United States."

12. But Defendants refuse to comply with law and answer valid requests for information from the Secretary of State of Iowa for the citizenship status of those people on the voter rolls for whom the State cannot verify their citizenship status using existing state resources.

**PARTIES**

13. Plaintiff Paul Pate is the Secretary of State of Iowa. The Secretary of State is the State commissioner of elections and supervises the activities of the county commissioners of elections. Iowa Code § 47.1. The Secretary is also the State's chief election officer. Iowa Code § 47.1. The Secretary is the State Registrar of Voters, responsible for voter registration and ensuring accuracy of the rolls. Iowa Code § 47.7; *see generally* Iowa Code ch. 48A.

14. Plaintiff Brenna Bird is the Attorney General of Iowa. She is authorized by Iowa law to sue on the State's behalf under Iowa Code § 13.2. The Attorney General also has exclusive authority to investigate and prosecute certain election-related crimes. *See* Iowa Code §§ 13.11, 39A.5, 39A.6.

15. Defendant Alejandro Mayorkas is the Secretary of Department of Homeland Security. He is sued in his official capacity.

16. Defendant Department of Homeland Security is an agency of the United States

Government. DHS is responsible for providing citizenship and immigration status information to States under 8 U.S.C. § 1373(c). *See also* 8 U.S.C. § 1551 note; 6 U.S.C. § 291; 6 U.S.C. § 542 note (transferring responsibility for complying with 8 U.S.C. § 1373(c) from the Immigration and Naturalization Service to the Department of Homeland Security).

17. Defendant Ur M. Jaddou is Director of U.S. Citizenship and Immigration Services. She is sued in her official capacity.

18. Defendant United States Citizenship and Immigration Services is the agency within DHS that is responsible for providing citizenship and immigration status information to States under 8 U.S.C. § 1373(c).

## JURISDICTION AND VENUE

19. The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1346, 1361, and 5 U.S.C. §§ 702–06.

20. The Court may award the requested declaratory and injunctive relief under 5 U.S.C. §§ 705–06, 28 U.S.C. §§ 1361 and 2201–02, the Constitution, and the Court's equitable powers.

21. This district is a proper venue under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

22. Plaintiffs have standing because Defendants have inflicted injury to Iowa's sovereign interest in creating and enforcing a legal code, an injury that a ruling in Plaintiffs' favor would redress.

23. Plaintiffs also have standing because they have suffered an informational injury. *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998). The informational injury harms them and a ruling in Plaintiffs' favor would redress the injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021).

24. Defendants have also interfered with the validity of an election by encouraging people to vote in the 2024 election despite knowing that they are ineligible to vote. *See* Iowa Code § 39A.3(*a*)(3).

## BACKGROUND

A.  **LEGAL BACKGROUND.**

25. Together, federal and state law prohibit non-U.S. citizens from registering to vote in any election in Iowa.

26. Federal law makes it "unlawful for any alien to vote in any election held solely or in part for the purpose of electing a candidate for" federal office. 18 U.S.C. § 611(a). Federal laws governing registration to vote require the form for federal elections to state "each eligibility requirement (including citizenship)," 52 U.S.C. § 20504(c)(2)(C)(i) and make it a crime to lie about citizenship when registering to vote "in any Federal, State, or local election," 18 U.S.C. § 1015(f). *Cf.* 8 U.S.C. § 1182(a)(10)(D).

27. Iowa law also explains that to be "qualified to register to vote as an eligible elector" the first condition is that the elector "[b]e a citizen of the United States." Iowa Code § 48A.5(2)(*a*); *see also* Iowa Const. art. II, § 1.

28. Iowa law makes it a felony to lie about citizenship status when registering to vote, Iowa Code § 39A.2(1)(a)(1), and for a noncitizen to cast a vote, *Iowa Code* . § 39A.2(1)(b)(3).

29. The Attorney General of Iowa has the authority to investigate to determine whether criminal activity occurred in connection with an election. Iowa Code § 39A.7. That authority includes the authority to investigate if noncitizens have registered to vote in Iowa and the authority to investigate whether noncitizens have voted in Iowa.

30. The Secretary is required by federal law to maintain the State's voter-registration list "in a manner that ensures that . . . voters . . . who are not eligible are removed" from the list. 52 U.S.C. §§ 21083(a)(2)(A), (a)(2)(B); *see also* 52 U.S.C. § 20507 (recognizing a state's obligation to conduct programs to remove ineligible voters from the rolls).

31. Federal law prohibits States from requiring voters to prove citizenship to vote in federal elections. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

32.     But federal law entitles state and local officials to receive citizenship status information from USCIS for any purpose authorized by law. Federal law requires USCIS to fulfill such information requests:

> [USCIS] shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

52 U.S.C. § 1373(c).

33.     Federal law prohibits the federal government from preventing state governments from requesting citizenship information from USCIS:

> Notwithstanding any other provision of Federal, State, or local law, a Federal . . . government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, [USCIS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

8 U.S.C. § 1373(a); 8 U.S.C. § 1644 (similar).

34.     In other words, the Attorney General and the Secretary may request citizenship information of persons on Iowa's voter registration list "for any purpose authorized by law," and Defendants must provide it.

**B.     FACTUAL BACKGROUND**

35.     Iowans are required to provide proof of citizenship or lawful presence when they obtain a driver's license or state-issued identification card.

36.     When Iowans try to register to vote, their citizenship status is automatically checked via routine procedures.

37.     The Secretary sends registrations to county registrars for investigation of eligibility, including a comparison of citizenship data from the Iowa Department of Transportation against every new registrant See Iowa Code § 48A.25A.

38.     If a registered voter's eligibility is challenged Iowa law also requires county registrars to send notice and hold a hearing to determine—based on evidence provided and information

6

obtained through any lawful means—is not eligible for registration, including due to non-U.S. citizenship. *See* Iowa Code § 48A.14(1)(*a*).

39. This check is necessary because non-U.S. citizens lawfully present cannot legally vote but can lawfully apply for and receive a driver's license or ID card.

40. But over 65,000 people who did not use an Iowa-issued driver's license or ID card to register are registered to vote in Iowa.

41. Those voters have never had their citizenship status verified.

42. Thus, it is possible for a non-U.S.-citizen to register to vote without using a driver's license or ID card.

43. Yet federal law prohibits Iowa from requiring proof of citizenship of the hundreds of thousands of people who did not use a driver's license or ID card to register to vote in Iowa.

44. So the Secretary and the Attorney General exercised their rights to obtain citizenship information under 8 U.S.C. § 1373(c).

45. On October 24, 2024, an agent from the Des Moines field office of USCIS left a message with the Secretary's call center explaining that he may be able to aid the Secretary in confirming citizenship status. Ex. A, Decl. of Michael Ross, ¶ 21.

46. The next day, the Secretary's Chief of Staff contacted the agent to describe the work the Secretary had already done. The agent agreed to review the list of names provided by the Secretary to confirm citizenship status. *Id.* ¶¶ 22–26.

47. That evening, the Agent told the Secretary of State's Chief of Staff that he had reviewed 146 names and that 18% were noncitizens. He anticipated completing his review within a couple of days. *Id.* ¶¶ 27–28.

48. On October 28, the Secretary wrote Defendant USCIS including answers and information responding to what USCIS requested. *Id.* ¶ 31. That was done with the intent of working with USCIS to release the names of known noncitizen registered voters in Iowa before the November 5 election. Ex. B.

49. On October 29, at around 4:09 p.m., the Secretary's team received an email from

USCIS (Washington, DC) to Iowa USCIS staff that included the quote: "We do not want you to release any information to the requestor. This RFI will require extensive research and review by multiple oversight offices." Ex. C.

50. On information and belief, that quote was referring to the completed request for information that included the names of hundreds of known noncitizen voters on Iowa's voter rolls and was an instruction to refuse to turn that information over at that time. Given the proximity to the election, it is likely that it was also, in effect, an order not to give that information to the Secretary before the election.

51. The "purpose authorized by law" is the Secretary's duties to perform list maintenance.

52. Iowa lacks access to the Systematic Alien Verification for Entitlements ("SAVE") program. The SAVE program is designed to confirm a person's lawful presence in the United States.

53. But the SAVE program is not an adequate tool, on its own, for a state seeking to verify the citizenship status of an individual on the voter rolls. The SAVE program requires the use of, among other things, a "unique DHS-issued immigration identifier"—information that is neither maintained by nor readily available to the Secretary of State of Iowa or Iowa's voter registrars.

54. Iowa's statewide voter registration system does not contain any "DHS-issued immigration identifier[s]." Even if the Secretary of State of Iowa could obtain this data from the Iowa Department of Transportation, that effort would be limited to individuals who provided such information to obtain a driver license or personal identification card—and thus would not encompass the individuals for whom there is no Iowa-issued driver license or ID card number in Iowa's voter registration system.

55. On top of that, USCIS charges users a fee for each verification submitted to the SAVE system. USCIS acknowledges that these fees—which Plaintiffs would have to pay simply to obtain data within the federal government's control—will more than double over the next three years. See U.S. Citizenship & Immigration Servs., SAVE Transaction Charges, https://www.uscis.gov/save/about-save/save-transaction-charges (last visited Oct. 21, 2024).

56. DHS and USCIS agreed to provide the information before reneging on that

8

agreement. *See* Ex. A, ¶¶ 31–44.

57. To this date, after the November 5 election, USCIS has not provided that information.

58. As a result of that failure to share information, 2,176 individuals (including noncitizen illegal voters) were subject to ballot challenges or showing proof of citizenship when they attempted to vote.

59. The State seeks the information to ensure that its elections were and will be safe and secure. The "purpose authorized by law" was investigating to determine whether criminal conduct occurred in connection with an election and to ensure the integrity of future Iowa elections.

60. Defendants have failed to respond to the State with confirmation of the list of noncitizens registered to vote in Iowa.

## CLAIMS FOR RELIEF

### Count One
### Agency Action Unlawfully Withheld or Unreasonably Delayed

61. Under the Administrative Procedure Act, a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA further requires that an agency "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b).

62. Under 8 U.S.C. § 1373(c), Defendants are required to "respond to an inquiry by [Plaintiffs] seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

63. Plaintiffs have made such inquiries to Defendants.

64. Defendants' failure to timely provide information in response to Plaintiffs' inquiries amounts to agency action unreasonably delayed or unlawfully withheld under 5 U.S.C. § 706.

### Count Two
### Violation of APA, 5 U.S.C. §§ 706(2)(A), (C)

65. Under the APA, a court shall hold unlawful and set aside agency action—including the "failure to act"—when it is "in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right" or is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 551(13); 701(b)(2); 706(2)(A), (C).

66. Defendants' decision to use only the SAVE program to respond to inquiries under 8 U.S.C. § 1373(c)—even though they possess additional information not available through that program, and even though Plaintiffs do not have the information necessary to make requests for information through that program—is contrary to their statutory obligations.

67. Section 1373(c) requires Defendants to "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual . . . by providing the requested verification or status information." Sections 1373(a) and 1644 prohibit Defendants from "in any way restrict[ing], any government entity or official from sending to, or receiving from, [USCIS] information regarding the citizenship or immigration status, lawful or unlawful, of any individual" and make clear that "no State or local government entity may be prohibited, or in any way restricted, from sending to or receiving from [USCIS] federal information regarding the immigration status, lawful or unlawful, of an alien in the United States."

68. These requirements apply to Plaintiffs' request to verify immigration or citizenship status of any person, regardless of whether that person's immigration or citizenship status can be verified through the SAVE program. Defendants' decision to limit their responses to inquiries that can be made via the SAVE program violates Section 1373(c). Defendants' policy to charge Plaintiffs a fee for each verification submitted to the SAVE system violates Sections 1373(c) and 1644.

### Count Three
### Declaratory Judgment, 28 U.S.C. § 2201(a):
### Defendants Owe Nondiscretionary Duties to Plaintiffs

69. Under the Declaratory Judgment Act, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

70. Section 1373(c) requires that Defendants "respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any

individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information."

71. When a state agency requests verification of an individual's citizenship or immigration status, Defendants owe a nondiscretionary duty to "provid[e] the requested verification or status information." *Id.*

72. Because Defendants have received inquiries from Plaintiffs to verify or ascertain the citizenship or immigration status of individuals within their jurisdiction for a purpose authorized by law, Plaintiffs are entitled to a declaration that Defendants must "respond" to the inquiry "by providing the requested verification or status information." *Id.*

73. Given that many of the 65,000 registered voters lack alien identification numbers in the State's voter registration system that it could use to cross reference with SAVE, the State requests the ability to check for potential noncitizens using identity characteristics including name, date of birth, and social security number (or last four digits) via automated batch processing. *See* Ex. A, ¶ 20.

74. Because Sections 1373(c) and 1644 prohibits Defendants in any way restricting States' receiving from USCIS immigration-status information on aliens in the United States, Plaintiffs are entitled to a declaration that Defendants must send that information to Plaintiffs without charging a fee via the SAVE system.

**RELIEF REQUESTED**

Plaintiffs respectfully request that the Court:

    a. Enjoin Defendants to promptly provide the immigration and citizenship status of each person on the list of 2,176 individuals provided by the Secretary of State to USCIS;

    b. Declare that Plaintiffs are entitled to prompt responses without cost to inquiries under 8 U.S.C. §§ 1373, 1644

    c. Declare that Plaintiffs may use existing processes for checking citizenship status including methods that allow searching without alien identification numbers via automated batch processing or databases outside of the SAVE program;

      d.   Award Plaintiffs attorneys' fees and other litigation costs reasonably incurred in this action; and

      e.   Grant Plaintiffs all other relief as may be just and proper.

BRENNA BIRD
Attorney General of Iowa

*/s/ Eric H. Wessan*
ERIC H. WESSAN
Solicitor General
PATRICK C. VALENCIA
Deputy Solicitor General
ANGELA STUEDEMANN*
Assistant Attorney General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
angela.stuedemann@ag.iowa.gov

*Counsel for State of Iowa*

\*Application for admission forthcoming